**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FRED RICHARD DREIS,

      Plaintiff-Appellee,

  v.

MARTIN HIETALA, as an individual
and in his official capacity as an
enforcement officer of the Davis
County Sheriff's Office,

      Defendant-Appellant.

No. 05-4221
(D.C. No. 1:02-CV-154-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

Defendant Martin Hietala, a Deputy Sheriff in Davis County, Utah (Deputy

Hietala), brings this interlocutory appeal from the district court's denial of his

motion for summary judgment based on qualified immunity. Because we lack

appellate jurisdiction over the district court's ruling, we dismiss this appeal.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

According to plaintiff Fred Dreis's version of events, on the evening of January 10, 2002, he was driving his 1976 truck in Ogden, Utah, on his way to a friend's home in Syracuse, Utah. While in Ogden, an unmarked vehicle, driven by off-duty Deputy Hietala (and containing a passenger), honked at Mr. Dreis and started following him. The unmarked vehicle followed Mr. Dreis "for a total of approximately 20 miles or nearly 30 minutes . . . in a menacing manner, violating the right-of-way of oncoming traffic . . . and running a red light . . . . " Aplt. App. at 12.

When Mr. Dreis reached his destination he pulled up to the curb, stopped, and exited his truck. Deputy Hietala "screeched to a halt at an angle to" Mr. Dreis's truck, *id.* at 61, and "jumped out of his vehicle in [a] . . . violent manner," *id.* at 12. After Mr. Dreis asked, "'Why are you following me?'" Deputy Hietala threw a badge wrapped in leather across the hood of his car, grabbed Mr. Dreis, struck him with his left forearm, and announced "'I'm a Deputy Sheriff; you are going to jail!'" *Id.* Mr. Dreis asked why, and Deputy Hietala responded, "'For reckless driving.'" *Id.*

Mr. Dreis, who himself is a trained law enforcement officer, observed that Deputy Hietala did not appear to have handcuffs or a weapon, and he neglected to ask Mr. Dreis for his license or registration. When Mr. Dreis asked to see Deputy Hietala's identification, Deputy Hietala refused and told Mr. Dreis that he "was

going to 'start stacking charges.'" *Id.* Meanwhile, the female passenger who was riding in Deputy Hietala's unmarked car continued to sit in the passenger seat. Mr. Dreis asked Deputy Hietala to call an on-duty uniformed officer or a supervisor, and he informed Deputy Hietala that he had a permit for, and was carrying, a concealed weapon. Deputy Hietala responded that "he was a supervisor and he didn't need to call anyone," *id.* at 62, and that "making that statement [regarding the concealed weapon] was an 'assault on a peace officer,'" *id.* at 12. "[Mr.] Dreis did not believe Hietala to be a true peace officer . . . ." *Id.* at 13. And because Mr. Dreis did not want Deputy Hietala to gain access to his concealed weapon and "us[e] it on him," he refused to cooperate with Deputy Hietala's request that he "turn his back . . . and place his hands behind him." *Id.* During the confrontation, Deputy Hietala grabbed at Mr. Dreis's coat, pulled and shoved him, and hit him in the chest with the palm of his hand "[f]ive or six" times. *Id.* at 63.

When an on-duty police officer arrived, Deputy Hietala told him to "'Hook [Dreis] up,'" *id.* at 13. Mr. Dreis voluntarily submitted to the uniformed officer's handcuffing and told him, "'I have a concealed weapon and a permit to carry it.'" *Id.* at 66. After the officer handcuffed Mr. Dreis, Deputy Hietala "pulled [Mr.] Dreis to the sidewalk [by] the handcuffs" and then "roughly raised [his handcuffed] hands high in the air behind him, bruising his wrists . . . ." *Id.* at 14. While Mr. Dreis's hands were still in the air, Deputy Hietala searched him,

-3-

jerking money from his pants pocket with sufficient force to tear several bills in half. Mr. Dreis's gun was seized and was not returned to him for two years.

II.

Mr. Dreis filed this action pursuant to 42 U.S.C. § 1983,

> alleging six claims for relief: (1) unreasonable search and seizure; (2) failure to be informed of the nature and cause of the accusation against him; (3) use of excessive force; (4) punishment without the benefit of a jury trial; (5) taking Dreis's property without due process of law; and (6) taking Dreis's property without just compensation.

Aplee. Br. at 3. At the end of the hearing on Deputy Hietala's motion for summary judgment, the district court concluded that genuine issues of material fact precluded the grant of qualified immunity. This interlocutory appeal followed.

III.

This court ordered the parties to brief the appealability of the district court's decision denying summary judgment based on qualified immunity. "Orders denying qualified immunity before trial are appealable only to the extent they resolve abstract issues of law." *Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir. 2006). Abstract issues of law include "what the current applicable law is, whether that law was clearly established at the time the official's action occurred, and whether the official's acts were objectively reasonable." *Campbell v. Mercer*, 926 F.2d 990, 991 (10th Cir. 1991). Orders denying qualified immunity before trial are not immediately appealable "when the

-4-

question is the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact," *Shrum*, 449 F.3d at 1137. *See also Gross v. Pirtle*, 245 F.3d 1151, 1156-57 (10th Cir. 2001) ("[W]e lack jurisdiction . . . if our review would require second-guessing the district court's determinations of evidence sufficiency.").

Deputy Hietala asserts that we have jurisdiction over this interlocutory appeal as to Mr. Dreis's claims for illegal seizure and arrest because the district court "plainly concluded both that (1) Officer Hietala's seizure and arrest of Dreis, viewed in light of the evidence most favorable to Dreis, violated Dreis's constitutional rights and (2) those rights were clearly established." Aplt. Jurisdictional Br. at 6. Having carefully reviewed the hearing transcript, we disagree. The district court did not determine whether Deputy Hietala's seizure and arrest of Mr. Dreis violated Mr. Dreis's constitutional rights. Rather, it concluded:

> One, it is disputed, and the record does not lend itself to a finding as a matter of law, that the deputy identified himself in such a way that a reasonable man in Mr. Dreis'[s] position would have known when the deputy said, "You are under arrest," that he was being arrested by a police officer. I think that is a factual issue whether it was reasonable for Mr. Dreis to not recognize him.
>
> Secondly, there is the question of the probable cause for the arrest. There is almost no evidence in this record that tells me one way or the other whether the probable cause statement is true. That is particularly significant in view of the fact that the question of whether Mr. Dreis can be said to legally have resisted arrest

knowingly when all the circumstances under which this arrest was made are not clear.

Aplt. App. at 178. Further, the district court's observation that "it would appear under the circumstances of this case that the law was clearly established regarding this sort of situation," *id.* at 179, does not make "evident," as Deputy Hietala contends, that the district *concluded* that Deputy Hietala had violated Mr. Dreis's constitutional rights, Aplt. Jurisdictional Br. at 6. The district court did not so hold. Indeed, the court's very next words belie Deputy Hietala's characterization of the court's oral ruling. Read in its entirety, the court's statement was:

> As far as the other steps in qualified immunity, certainly it would appear under the circumstances of this case that the law was clearly established regarding this sort of situation. *But, again, because of the paucity of the record, I cannot say.* And I really don't know whether if a mistake was made by the deputy, whether that mistake was reasonable.

Aplt. App. at 179 (emphasis added).

Deputy Hietala also argues that, viewing the facts in the light most favorable to Mr. Dreis, he did not illegally seize or arrest Mr. Dreis. *See, e.g.,* Aplt. Opening Br. at 12-16. While it is true that a district court's denial of qualified immunity is immediately appealable if a defendant's appeal "is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law," *Johnson v. Martin*, 195 F.3d 1208, 1214 (10th Cir. 1999), Deputy Hietala omits constitutionally salient facts. Because Deputy Hietala omits salient facts, he fails to demonstrate that, on the facts as

alleged by Mr. Dreis, Deputy Hietala's seizure and arrest did not violate Mr. Dreis's constitutional rights.

Deputy Hietala next asserts that we have jurisdiction over this interlocutory appeal as to Mr. Dreis's claim for excessive force despite the "district court['s] fail[ure] to conduct a proper qualified immunity analysis with respect to Dreis's excessive force claim," Aplt. Jurisdictional Br. at 11. We disagree. With respect to excessive force, the district court found disputed issues precluded the grant of qualified immunity. Specifically, it stated:

> Third, there is a question of excessive force. . . . [T]his record is almost devoid of any evidence of what was objectively reasonable in this case. According to the evidence that I have before me, Mr. Dreis was struck five or six times during the course of this incident. A jury might find that under the circumstances to be unreasonable. I simply cannot say.

Aplt. App. at 178-79.

Because the district court's conclusion concerning excessive force, like the district court's conclusion regarding the alleged unlawful seizure and arrest of Mr. Dreis, is, at base, nothing more than a decision about evidentiary sufficiency, we must DISMISS this appeal for lack of jurisdiction. *See Gross*, 245 F.3d at 1157 ("If we determine the district court's conclusion rests on findings of evidence sufficiency, we must dismiss for lack of jurisdiction.").

Entered for the Court

Bobby R. Baldock
Circuit Judge